IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Southern Division)

| | |
|---|---|
| VICTOR FERNANDES ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No.  10-00752 |
| v. ) | |
| ) | |
| MONTGOMERY COUNTY, MD, et. al. ) | |
| ) | |
| Defendants. ) | |
| _____) | |

PLAINTIFF'S OPPOSITION TO DEFENDANT'S
MOTION FOR PARTIAL SUMMARY JUDGMENT

Plaintiff, by and through undersigned counsel, hereby files the following

Opposition to Defendants, Jason Huggins and Paul Craine, motion for partial summary

judgment:

I.    STATEMENT OF THE CASE

On March 25, 2010, Plaintiff filed a six count Complaint against Montgomery

County, Maryland, and three Montgomery County police officers, Dale Anonsen, Paul

Craine, and Jason Huggins. The Complaint relates to Plaintiff's arrest on March 25, 2009.

The Complaint alleges claims under 42 U.S.C. § 1983, as well as claims under state law,

due to Plaintiff being arrested, detained and prosecuted without probable cause, and the

police having used excessive force in arresting him.

II.    STATEMENT OF DISPUTED MATERIAL FACTS

Mr. Fernandes describes the events on the evening in question as follows:

On March 25, 2009, Mr. Fernandes was driving his vehicle on Georgia Avenue in

Silver Spring, MD.  On that evening, Officer Craine had stopped another vehicle on

Georgia Avenue. (Deposition Transcript of V. Fernandes (Ex 1) at 32). As Mr. Fernandes approached, Officer Craine signaled for him to stop from the middle lane of Georgia Avenue. (*Id*. at 33). As Mr. Fernandes came closer to Officer Craine, the officer began to yell repeatedly "can you see me." (*Id*. at 33).

Officer Craine then stopped Mr. Fernandes' vehicle in the middle of the Georgia Avenue, but he directed Mr. Fernandes to pull over to side. (*Id*.).

Mr. Fernandes then pulled his vehicle over to the side of the road in front of the car Officer Craine had stopped. (*Id*. at 33).

Officer Craine came to the passenger side of Mr. Fernandes vehicle and again started screaming "Can you see me?" (*Id*. at 40). He then asked Mr. Fernandes for his license and registration. (*Id*.). In response, Mr. Fernandes began patting his clothes looking for his wallet. (*Id*. at 40-41). When Mr. Fernandes went to grab his wallet out of his pants, Officer Craine smashed the passenger side window of his vehicle. (*Id*. at 41).

When he did this, Mr. Fernandes asked him "Why he broke the window?" and said that that he was going to call the police. (*Id*. at 44). Officer Craine shouted "I am the police!" (*Id*. ). Officer Craine then crossed the front of Mr. Fernandes vehicle and came to the driver's side, opened the door and tried to pull Mr. Fernandes out of the car. (*Id*.) Afraid of what Officer Craine would do next, Mr. Fernandes held onto the steering wheel. (*Id*.). When Mr. Fernandes realized Officer Craine was not going to stop, Mr. Fernandes let go and Officer Craine pulled Mr. Fernandes out. (*Id*.).

Once Mr. Fernandes was out of his vehicle, Officer Craine immediately began choking Mr. Fernandes and put his knee in Mr. Fernandes' back. (*Id*. at 47, 48-49; 52:18-19). While he was doing this, Officer Craine repeatedly punched Mr. Fernandes in

the face and eyes from behind.  (*Id*. at 49-51).  Mr. Fernandes tried to break his grip around his neck, but could not and Mr. Fernandes passed out and fell to the ground.  (*Id*. at 2:18-19).

When Mr. Fernandes regained consciousness, he felt at least two other officers kicking him about his body.  (*Id*. at 53:13-17).

During this entire portion of the incident involving Officer Craine, Officer Craine was never inside Mr. Fernandes' vehicle.  (*Id*. at 55:3-4).  Further, Mr. Fernandes' testified during his deposition that at no time that evening did he strike an officer or grab an officer.  (*Id*. at 55:3-12).

Officer Huggins claimed that he was directed to the scene by an officer in distress call, and when he arrived on the scene, he observed Plaintiff fighting with Officer Craine, and Officer Craine was inside Plaintiff's truck, and his legs were hanging out of the door of the truck, flailing in midair. (Huggins Dep. (Ex 2) at 17:6-14; 17:1-5). Officer Huggins claims that as he approached the vehicle, Mr. Fernandes and Officer Craine had a hold of each other, and Plaintiff was leaning in his seat, pulling Officer Craine into the truck, whose "feet were still elevated off the ground."  (Huggins Dep. (Ex 2) at 19:1-9). Officer Huggins alleges that Officer Craine was striking Mr. Fernandes with his flashlight.  (Huggins Dep. (Ex 2) at 20:3-16).

Officer Huggins' description of his actions is contradicted not only by Mr. Fernandes (as described above), but by a third party witness by the name of Marvin Erazo.[1]  According to Mr. Erazo, no officers arrived in support of Officer Craine until after Mr. Fernandes was out of his vehicle and on the ground.  (Erazo Decl (Ex 3) at 4).

---

[1] Mr. Erazo testified at Mr. Fernandes' criminal trial and substantiated Mr. Fernandes' description of the incident.  (Cr. Trial Tr (Ex 4) at 96-111).

According to Mr. Erazo, Mr. Fernandes was not struggling with the initial officer at this time, and none of these officers arrived when Mr. Fernandes was still in his vehicle. (*Id*.).  Mr. Erazo maintains that when the other officers arrived, they started kicking and punching Mr. Fernandes while he was on the ground.[2]  (*Id*. at 5).

Mr. Fernandes was charged with resisting arrest, assault of a police officer, and second degree assault.  Mr. Fernandes' criminal trial was on June 26, 2009.  At the trial, the assault of a police officer  charge was *nolle prosequied*, and Mr. Fernandes was found not guilty of the remaining charges after a full trial on the merits.

<u>LEGAL ARGUMENT</u>

I.       <u>STANDARD OF REVIEW</u>

Summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a).

II.       <u>MR. FERNANDES' FEDERAL CLAIMS</u>

Counts I and II of Plaintiff's Complaint alleges claims under 42 USC 1983. Count I alleges that the Defendant Officers violated Mr. Fernandes' rights under the Fourth and Fourteenth Amendments to the U.S. Constitution by arresting, detaining, and prosecuting Mr. Fernandes for second degree assault, resisting arrest, and assaulting a police officer without probable.  Count II of the Complaint alleges that the Defendant Officers violated Mr. Fernandes' rights under the Fourth Amendment to the U.S. Constitution by using excessive force during Mr. Fernandes' arrest.  The excessive force

---

[2] It is also worth noting that there are conflicts between Officer Craine's description of the incident and that of Officer Huggins.  For instance, while Officer Huggins claims he observed Officer Craine striking Mr. Fernandes with his flashlight (Huggins Dep. (Ex 2) at 20:10-16), Officer Craine contends that the flashlight landed in the front passenger seat when he struck Mr. Fernandes' window.  (Craine Dep. (Ex 5) at 52:6-9).

claim takes two forms – one, the force used was excessive because less force could have been used to subdue Mr. Fernandes and two, because the arrest was improper in the first instance, any use of force was impermissible under the Fourth Amendment.

Officer Huggins moves for summary judgment on all of these claims, and both Officer Craine and Officer Huggins move for summary judgment with regard to Plaintiff's claims under the Fourteenth Amendment in Count I.  For the reasons described more fully hereafter, both Officers' motions should be denied.  With regard to Officer Huggins arguments, there  are disputed questions of material fact that preclude summary judgment.  With regard to the Fourteenth Amendment claims, the officers are both wrong on the law, and  there  are disputed questions of material fact that preclude summary judgment.

     1.     There Are Disputed Questions Of Material Fact Related To
                 Mr. Fernandes' Claim That Officer Huggins
                 <u>Violated His Fourth Amendment Rights</u>.

In Count I of his Complaint, Plaintiff alleges that the Defendants violated his constitutional rights under the Fourth Amendment to the United States Constitution by arresting, detaining, and imprisoning him without probable cause and that all Defendants are liable to him pursuant to 42 U.S.C. § 1983.

Officer Huggins alone seeks summary judgment on this Count.  In his Motion for Summary Judgment, Officer Huggins argues that what occurred between Officer Craine and Mr. Fernandes prior to his arrival and whether Officer Craine had probable cause to believe Mr. Fernandes committed a crime is irrelevant; instead, the only pertinent inquiry is what Officer Huggins knew and could observe upon his arrival at the scene. According to Officer Huggins, on the evening in question, he was notified that an officer

was in distress, and when he responded to the scene, Mr. Fernandes was "actively

resisting arrest, and Officer Huggins needed to render immediate assistance to prevent

further harm and injury to Officer Craine." Motion at 7.  Based on this, Officer Huggins

maintains that he is entitled to summary judgment because he had probable cause to

arrest, detain, and prosecute Mr. Fernandes.

However, there are disputed questions of material fact related to what Officer

Huggins observed and what he did that evening.

According to Mr. Erazo, contrary to Officer Huggins' contention that Mr.

Fernandes was involved in a struggle with Officer Craine in his vehicle, Mr. Fernandes

was not in his vehicle when the other officers arrived, but was already in the street with

Officer Craine.  (Erazo Decl (Ex 2) at ¶4).   Further, according to Mr. Erazo, when the

other officers arrived, Mr. Fernandes was not struggling.  (*Id*.).  Instead, when the other

officers arrived, they simply started to kick and punch Mr. Fernandes.  (*Id*. at ¶5).

Officer Huggins also maintains that Mr. Fernandes admits to resisting the illegal

arrest of Officer Huggins.   This is not accurate.

There are three stages to this incident – when Mr. Fernandes was in vehicle, when

he was pulled from his vehicle and was caused to lose consciousness, and when he

regained consciousness.

As to when Mr. Fernandes was in the vehicle, there is a factual dispute whether

Officer Huggins even observed any part of this. According to Mr. Erazo, the other

officers did not arrive until after Mr. Erazo was out of his vehicle.  (Erazo Decl (Ex 3) at

¶4).  But even if Officer Huggins did arrive during this time, Mr. Fernandes stated during

his deposition that all he did while he was in his vehicle was hold on to the steering

wheel.  (Fernandes Dep. (Ex 1) at 44).  When he realized Officer Craine was not going to stop attempting to pull him out, Mr. Fernandes let go and Officer Craine pulled Mr. Fernandes out.  (*Id*.).

As to the second stage of this incident,  Mr. Fernandes testified that after he exited the vehicle, he was caused to fall to the ground because he lost consciousness from Officer Craine choking him. (Fernandes Dep. (Ex 1) at 51:5-11; 52:16-19).  When he regained consciousness, he felt kicks to his body.  (*Id*. at 53:13-17).  Thus, because he was unconscious, Mr. Fernandes could not have been resisting Officer Huggins' arrest (as confirmed by Mr. Erazo); yet, he still awoke to being kicked.

After he regained his consciousness, Mr. Fernandes does admit that he was "trying to fight with my leg" but this was after he regained consciousness and felt kicks to his body.  (*Compare Id*. at 52:13-15, 53:24-25 *with* 53:13-17).  To the extent that any of Mr. Fernandes' actions after he regained consciousness could be construed as resisting Officer Huggins' attempts to arrest him, there are still disputed questions of material fact related to whether Officer Huggins had probable cause to arrest Mr. Fernandes.

As explained above, according to both Mr. Erazo and Mr. Fernandes, when Officer Huggins arrived, Mr. Fernandes was not struggling with Officer Craine.  In fact, according to Mr. Fernandes, he was unconscious.  When he regained consciousness, he felt kicks to his body.  (*Id*. at 53:13-17).  Thus, according to Mr. Erazo and Mr. Fernandes, when Officer Huggins arrived on the scene he had no probable cause to believe that Mr. Fernandes had committed a crime.

Because there are disputed questions on this point, there are, in turn, disputed questions related to whether Mr. Fernandes was entitled to resist Officer Huggins'

attempts to arrest him.   "It is beyond cavil that 'the right to resist an unlawful, warrantless arrest remains the law of Maryland.'" *Wiegmann v. State*, 118 Md. App. 317, 330, 702 A.2d 928 (1997), *aff'd*, 350 Md. 585, 714 A.2d 841 (1998) (citation omitted). Therefore, "when confronted with an unlawful, warrantless arrest, one may lawfully resist by resorting to reasonable force." *Wiegmann*, 118 Md. App. at 330, 702 A.2d 928. Thus, because there are disputed questions related to whether Mr. Fernandes could lawfully resist the illegal arrest of Officer Huggins, there are, in turn, disputed questions related to whether Officer Huggins could arrest Mr. Fernandes for resisting arrest.

For these reason, there are disputed questions of material fact regarding whether Officer Huggins had probable cause to arrest, detain, and prosecute Mr. Fernandes, and summary judgment must be denied with regard to Count I of the Complaint.

2.    <u>Plaintiff's Fourteenth Amendment Claims</u>.

Count I of the Complaint alleges that Defendants Craine and Huggins violated Plaintiff's Fourteenth Amendment rights by arresting, detaining him, and imprisoning him without probable cause.  Defendants Craine and Huggins move for summary judgment on Plaintiff's Fourteenth Amendment Claim.

With regard to Plaintiff's Fourteenth Amendment claim, Defendants focus on this Court's statement during the hearing on Defendants' Motion to Dismiss, that this claim is "most appropriately analyzed under the Equal Protection Clause of the Fourteenth Amendment," *Fernandes v. Montgomery County*, 2010 U.S. Dist. LEXIS 121215 at *11 (D. Md. Nov. 15, 2010).  From this, Defendants Craine and Huggins argue that they are entitled to judgment because there is no evidence that Plaintiff was treated any differently from any other person due to his being part of a suspect class.

As an initial matter, Defendants are incorrect that Plaintiff's Fourteenth Amendment claim requires proof that Plaintiff was treated differently because he is a member of a suspect class.  In fact, courts have routinely held that  police misconduct can violate the ***due process clause*** of the Fourteenth Amendment where the officer engages in conduct that "shocks the conscience." *County of Sacramento v. Lewis*, 523 U.S. 833, 847 (1998).  The Defendants do not address whether the actions of the Defendant Officers violate this standard, so the motion of Officers Craine and Huggins must be denied on this basis.

However, even if Plaintiff's Fourteenth Amendment claims are analyzed under the Equal Protection Clause, there is evidence that Officer Craine was aware that Mr. Fernandes was a member of a protected class.  During his deposition, Officer Craine testified that during the stop, Mr. Fernandes was speaking in a foreign language.  (Craine Dep. (Ex 4) at 18-19).  Thus, Officer Craine did know that Mr. Fernandes' national origin was something other than American, placing Mr. Fernandes in a suspect class.

For these reasons, Defendants' Motion of  Summary Judgment should be denied with regard to Mr. Fernandes' 14th Amendment claim in Count I of the Complaint.

> 3.    There Are Disputed Questions Of Material Facts Regarding Whether Officer Huggins Used Excessive Force in Violation of Plaintiff's Fourth Amendment Rights.

In Count II of his Complaint, Mr. Fernandes alleges that Officers Craine and Huggins violated his Fourth Amendment rights by kicking and punching him.  The Complaint alleges that the force used was excessive both because less force could have been used to subdue Mr. Fernandes and because the arrest was improper in the first instance, making any use of force impermissible under the Fourth Amendment. Because

Defendants acknowledge that there are disputes of material fact regarding Plaintiff's claim against Officer Craine, he is not seeking summary judgment on this Count.

Officer Huggins maintains that there are no disputed questions of material fact regarding the claim against him.  More specifically, Officer Huggins alleges that he is entitled to summary judgment because (1) Mr. Fernandes cannot identify him as one of the individuals who kicked and punched him, and (2) his actions were objectively reasonable.

A.  Circumstantial evidence identifies Officer Huggins as one of the <u>individuals who kicked and punched Mr. Fernandes</u>.

While it is true that Mr. Fernandes could not specifically identify Officer Huggins as one of the individuals who kicked him, there is other evidence establishing that Officer Huggins did, in fact,  kick Mr. Fernandes.

First, Officer Huggins admits that he was the first officer to arrive on the scene in support of Officer Craine, and that he was involved in a lengthy struggle with Mr. Fernandes before the other officers arrived.  (Huggins Dep. (Ex 2) at 19-24).  Further, according to Officer Huggins, he was on the scene when Mr. Fernandes was out of his vehicle and on the ground, which is when Mr. Fernandes was kicked.

Second, Mr. Fernandes testified that after he was choked by Officer Craine, he passed out for a few seconds, and awoke to being kicked and punched.  (Fernandes Dep. (Ex 1) at 53:13-17).

Third, Mr. Erazo states in his Declaration that the officers who responded to the scene after Officer Craine, immediately started to kick Mr. Fernandes.  (Erazo Decl (Ex 3) at ¶5).

From this, a jury could reasonably conclude that Officer Huggins was one of the officers who was kicking Mr. Fernandes.

In this way, the cases cited by Officer Huggins in his Motion are inapposite.  In each of the cases cited by Officer Huggins, none of the officers involved in accosting the plaintiff could be identified.  In the present case, while Mr. Fernandes cannot state with certitude that Officer Huggins kicked and punched him, Mr. Fernandes' description of the incident in tandem with the testimony of Officer Huggins and the statements of Mr. Erazo combine to adequately identify Officer Huggins.

For these reasons, Officer Huggins' Motion of  Summary Judgment should be denied with regard to Count II of the Complaint.

> B.   There are disputed questions of material fact related to whether Officer Huggins used excessive force

Similar to the arguments he made regarding Count I of the Complaint, Officer Huggins maintains that he did not use excessive force because the situation he observed required the force utilized.  More specifically, Officer Huggins maintains that he was responding to an emergency call that a fellow officer was in need of assistance, and when he arrived on scene, he observed Plaintiff actively fighting with Officer Craine and actively resisting arrest.  Officer Huggins alleges that even after he arrived on scene, Plaintiff continued to actively fight with the police in a purportedly attempt to resist arrest.

For the reasons discussed *supra*, there are disputed questions of material fact regarding what Officer Huggins observed when he arrived at the scene and what occurred once Officer Huggins arrived.  While Officer Huggins maintains that Mr. Fernandes and

Officer Craine were involved in a struggle that began in Mr. Fernandes' vehicle and extended to the street, Mr. Fernandes and Mr. Erazo dispute this.

While Officer Huggins argues that Mr. Fernandes continued to resist Officer Huggins' attempts to resist him, Mr. Fernandes disputes this.

Further, to the extent that Mr. Fernandes' actions after Officer Huggins arrived could be construed as resisting Officer Huggins' attempts to arrest him, as explained previously, there are disputed questions of fact regarding whether Officer Huggins had probable cause to attempt to arrest Mr. Fernandes in the first instance; in other words, whether the attempts to arrest Mr. Fernandes were legally justified.  Because there are disputed questions on this point, there are, in turn, disputed questions related to whether Mr. Fernandes was entitled to resist Officer Huggins' attempts to arrest him, and therefore whether Officer Huggins had probable cause to attempt to arrest Mr. Fernandes. *Wiegmann*, 118 Md. App. at 330 ("when confronted with an unlawful, warrantless arrest, one may lawfully resist by resorting to reasonable force.").

For these reasons, Officer Huggins' Motion of  Summary Judgment should be denied with regard to Count II of the Complaint.

2.      Officer Huggins' claim that any alleged injuries Plaintiff suffered were de minimis.

Officer Huggins maintains that he is entitled to summary judgment regarding Mr. Fernandes' excessive force claim because Mr. Fernandes' primary injuries were to his face and eyes, and were not the result of his being kicked.  From this, Officer Huggins argues that any injuries from him being kicked were *de minimis*, and Officer Huggins did not therefore violate Mr. Fernandes' Fourth Amendment rights.

Officer Huggins misstates both the facts and the law.

First, factually there is no indication that Mr. Fernandes' injuries were *de minimis*. Mr. Fernandes testified that he was repeatedly kicked. While the injuries were not as significant as the orbital fractures caused by Officer Craine repeatedly punching him in the face, it is simply incredible to believe that the injuries were not significant. For instance, the notes from the Emergency Room state that Mr. Fernandes was "severely assaulted by the police." (Ex 6 at 166). Further, those injuries extended beyond Mr. Fernandes' face, which is where he was struck by Officer Craine before Officer Huggins arrived. For instance, the Hospital ordered that Mr. Fernandes have a CT Scan of his spine due to "Pain/Trauma." (*Id*. at 175). The Hospital also ordered a chest X-ray because of "pain." (*Id*.).

Second, even if the injuries were *de minimis,* relevant case law does not have a bright line test that an individual's Fourth Amendment rights are not violated in such instances. Instead, the extent of an individual's injuries is only one of ***many factors*** considered by a Court. *Jones v. Buchanan*, 325 F.3d 520, 527 (4th Cir. 2003). Courts focus on the extent of the injury as a method for determining the amount of force utilized. Thus, in *Brown v. Gilmore*, 278 F.3d 362 (4th Cir. 2002) (cited by Officer Huggins), the Court found entered judgment in favor of the officers not because of the minimal injuries but because " the circumstances justified the minimal level of force applied by Officer Pina." *Id*. at 369.

Here, even if Mr. Fernandes' injuries were *de minimus*, it cannot be argued that repeatedly kicking Mr. Fernandes while he is lying prone on the ground and unconscious is not a violation of his Fourth Amendment rights.

Third, the extent of the person's injuries is only relevant in those cases when it is determined that the officer had probable cause to believe the person committed a crime. In those cases, the Court then looks to whether the force utilized by the officer was reasonable in light of the crime committed and the person's response to being arrested. *Gilmore*, 278 F.3d at 369 (court determined that officers had probable cause for arrest).

Here, one of Mr. Fernandes' claims that is that **any** force utilized was excessive because there was not probable cause to arrest him in the first instance. Defendants have cited to no cases holding that the extent of the plaintiff's injuries is relevant in such instances.

For the foregoing reasons, Officer Huggins motion should be denied.

3.     There Are Disputed Questions Regarding Whether Officer Huggins Is Entitled to Qualified Immunity

Officer Huggins argues that he is entitled to summary judgment on Counts I and II based on the qualified immunity afforded public officials who act in "good faith." *See Harlow v. Fitzgerald*, 457 U.S. 800, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1981); *Wilson v. Jackson*, 66 Md. App. 744, 505 A.2d 913 (1986).

As he argues in other portions of his motion,  Officer Huggins contends that he was acting in good faith based on what he purports to have known at the time he arrived on the scene (i.e. an officer was in need of assistance) and what he allegedly observed when he arrived on the scene (i.e. Mr. Fernandes involved in an altercation with Officer Craine and resisting arrest).  However, as explained *supra*, there are disputed questions of material fact related to what Officer Huggins did observe, and the Court therefore cannot resolve the question of whether his actions were objectively reasonable under the circumstances.

For this reason, Officer Huggins' motion should be denied.

III.   PLAINTIFF'S STATE LAW CLAIMS

    1.   <u>The Court  Should Not Revisit Its Prior Decision Regarding The LGTCA</u>.

With regard to Plaintiff's state law claims, Defendants had originally filed a

Motion to Dismiss, arguing that these claims should be dismissed because Plaintiff failed

to comply with the Local Government Tort Claims Act ("LGTCA") by serving his notice

of claim four days after the deadline.

The Court denied that portion of the motion, holding that:

> The exercise of discretion involves looking at the totality of the
> circumstances, and the Court believes that a reasonably prudent and
> diligent person in Plaintiff's position might not have filed timely notice.
> Initially, Plaintiff was ignorant of the requirement that he file notice, and
> he had trouble retaining an attorney for his civil claims who might have
> relieved his ignorance and instructed him of his obligation to notify the
> County; when he finally did consult with an attorney about his civil case,
> that attorney allegedly frightened him out of pursuing his civil claims by
> telling him that Montgomery County would retaliate against him if he did;
> and while all of this was going on, he was defending himself against
> criminal charges. *See* Doc. No. 5, Ex. 1. Furthermore, Plaintiff filed notice
> with the County only four days outside the 180-day period, which, taken
> together with the other facts discussed above, convinces the Court that
> Plaintiff has good cause for providing untimely notice.

Thus, the Court considered five different factors in denying Defendants' motion:  (1) Mr.

Fernandes' ignorance of the LGTCA notice requirement; (2) difficulties in obtaining an

attorney to represent him in this case; (3) an attorney indicating that as a Montgomery

County resident, Mr. Fernandes would face constant retaliation by Montgomery County

police if he pursued a civil case; (4) the fact he was dealing with a criminal case; and (5)

the notice was only four  days late.

In their motion for summary judgment, the Defendants ask the Court to reconsider

its decision based on supposedly newly-discovery evidence.  According to the

Defendants, Mr. Fernandes testified during his deposition that he spoke with an attorney about filing this civil case and that he took pictures of his injuries to document his damages in this civil case.  From this, Defendants argue that "[b]y his own admission, Plaintiff knew about his cause of action and planned to file this suit from the date of the incident."

This "newly discovery evidence" is irrelevant for three reasons.

First, none of the "newly discovery evidence" (e.g. that Plaintiff knew about his cause of action and planned to file suit) relates to any of the five bases of the Court's original decision described *supra*.

Second, none of this evidence is newly discovery.  To the contrary, Mr. Fernandes stated in his original Declaration filed in response to the Defendants' Motion to Dismiss that ***he had tried to find an attorney*** to represent him in a civil case against the Officers and the County, but that he could not find an attorney to take the case on.  (Exhibit 7).  It was this inability to find an attorney that the Court focused on in its original decision, not the question of whether Mr. Fernandes had tried to find an attorney in the first instance.

Third, the Defendants are misinterpreting Mr. Fernandes deposition testimony. With regard to whether he had contacted an attorney, Mr. Fernandes testified as follows:

> Q.      That's what I'm trying to figure out.  The same day or the following day with the event with the police officers you talked about the event, and I'm not going to go into the substance of it, but you talked about the event with an attorney.
> A       My wife was trying to take me out of jail.  Maybe she had talked with the attorney, but me I was in jail.
> Q       Okay.  But later that night or the next day, did you talk to an attorney?
> A.      Yes.

(V. Fernandes Dep. (Ex 1) at 79:15-25, 80:1-3).  At no time did counsel for the

Defendants ask Mr. Fernandes if he had spoken with an attorney ***about filing this civil***

***case***.  Instead, counsel asked if Mr. Fernandes had spoken with an attorney about the

"event," which Mr. Fernandes took to mean a criminal attorney in response to the

expected criminal charges.  (Fernandes Declaration (Ex 8) at ¶2).  In fact, the first time

Mr. Fernandes contacted an attorney to represent him in a civil case was shortly after his

criminal trial on June 26, 2009.  (Fernandes Declaration (Ex 8) at ¶3).

　　　For these reasons, Defendants' motion for summary judgment on Plaintiff's state

law claims should be denied.

　　　2.　　　There Are Disputed Questions Of Material Fact Related To Plaintiff's
　　　　　　　Claim of Malicious Prosecution Against Officer Huggins, Precluding
　　　　　　　Summary Judgment.

　　　In Count III of the Complaint, Mr. Fernandes claims that Officers Huggins and

Craine participated in the institution and continuation of criminal proceedings against

him by providing false information to Officer Anonsen and the State's Attorney.  In order

to establish the tort of malicious prosecution, a plaintiff must prove: (1) a defendant

instituted a criminal proceeding against the plaintiff; (2) the criminal proceeding is

resolved in the plaintiff's favor; (3) the defendant did not have probable cause to institute

the proceedings; and (4) the defendant acted with malice or a primary purpose other than

bringing the plaintiff to justice. *Okwa v. Harper*, 360 Md. 161, 183, 757 A.2d 118, 130

(2000).

　　　In his motion, Officer Huggins does not dispute that Mr. Fernandes was arrested

or that the charges against Mr. Fernandes were resolved in his favor.　Instead, Officer

Huggins argues that that Mr. Fernandes cannot prove that (1) Officer Huggins initiated

the proceedings, (2) Officer Huggins did not have probable cause to arrest Mr. Fernandes, and/or (3) that Officer Huggins acted with malice.  However, as explained *infra*, there are disputed questions of material fact related to this claim that preclude summary judgment in Officer Huggins' favor.

A.      The initiation element.

Officer Huggins maintains that he did not initiate criminal proceedings against Mr. Fernandes  because Officer Huggins did not go to the Central Processing Unit, did not prepare the Statement of Probable Cause or Statement of Charges, and did not review them before they were presented to the Commissioner.

While it appears accurate that Officer Huggins did not prepare the Statement of Probable Cause (Exhibit 9), Officer Huggins certainly provided information to the officer who did prepare this Statement.  There is information in the Statement of Probable Cause that could only have been provided by Officer Huggins, e.g. Huggins observed Mr. Fernandes fighting with Officer Craine and Mr. Fernandes holding Officer Craine in his vehicle, Mr. Fernandes fought with Officer Huggins.  (*Id*.).  By providing this information for use in the Statement of Probable Cause, Officer Huggins was involved in the "initiation" of criminal proceedings against Mr. Fernandes.  *Wood v. Palmer Ford, Inc.*, 47 Md. App. 692, 425 A.2d 671 (1981) (individual is liable for taking an active part in directing or aiding in the conduct of a case); *Smithfield Packing Co. v. Evely*, 169 Md. App. 578, 905 A.2d 845, *cert. denied*, 396 Md. 10 (2006) (individual is liable for aiding and assisting in criminal prosecution and providing false information to authorities)

In addition, Officer Huggins testified at Mr. Fernandes' criminal trial.  (Cr. Tr. Tr (Ex 4) at 64-78.  That testimony was used to support Mr. Fernandes' prosecution for the

crimes he was charged with.  Further, it stands to reason that at some point in Mr.

Fernandes' criminal case, Officer Huggins shared the information he testified to with the

State's Attorney.  By doing so, Officer Huggins was involved in the "initiation" of

criminal proceedings against Mr. Fernandes.  *Wood*, 47 Md. App. 692, 425 A.2d 671;

*Smithfield Packing Co.*, 169 Md. App. 578.

    For these reasons, Officer Huggins motion should be denied.


    B.    The probable cause element.

    Officer Huggins argues in his motion for summary judgment that Mr. Fernandes

cannot prove that Officer Huggins lacked probable cause because the undisputed facts are

that Officer Huggins was responding to a call for an officer in need of assistance, and

when he arrived on scene, Plaintiff was actively fighting Officer Craine.  Thus, regardless

of what occurred between Office Craine and Mr. Fernandes before Officer Huggins'

arrival, according to Officer Huggins, he had probable cause to believe that Plaintiff was

resisting arrest.  Officer Huggins also maintains Plaintiff admitted that he continued to

resist arrest while on the ground, fighting for his life and fighting with his leg.

    However, as explained *supra*, based on the testimony of Mr. Fernandes and the

declaration of Mr. Erazo, all of these factual assertions by Officer Huggins are disputed.

    Further,  as explained *supra*, even assuming Mr. Fernandes was resisting Officer

Huggins attempts to arrest him, because there are disputed questions of material fact

regarding whether Officer Huggins had probable cause to arrest Mr. Fernandes there are,

in turn, disputed fact regarding whether Mr. Fernandes was permissibly resisting an

illegal arrest. *Wiegmann*, 118 Md. App. at 330, 702 A.2d 928 (It is beyond cavil that 'the right to resist an unlawful, warrantless arrest remains the law of Maryland.'")

For this reason, summary judgment on Plaintiff's malicious prosecution claim against Officer Huggins must be denied.

> C.      The malice element.

Officer Huggins argues in his motion for summary judgment that Mr. Fernandes cannot establish that Officer Huggins acted with malice or a primary purpose other than bringing the plaintiff to justice.

However, case law is clear that malice may be inferred from the lack of probable cause. *Okwa v. Harper*, 360 Md. 161, 189, 757 A.2d 118 (2000).  Since for the reasons explained above, there are disputed questions of material fact surrounding whether Officer Huggins had probable cause to believe Mr. Fernandes was committing a crime, there are also disputed questions of material fact regarding whether Officer Huggins acted with malice..

For this reason, summary judgment on Plaintiff's malicious prosecution claim against Officer Huggins must be denied.

> 2.      There Are Disputed Question Of Material Fact Related To Plaintiff's False Imprisonment, False Arrest, and Assault and Battery Claims

> A.  False arrest and false imprisonment claim.

Under Maryland law, the elements of false arrest and false imprisonment are identical. *Heron v. Strader*, 361 Md. 258, 264, 761 A.2d 56 (2000). Both require an officer to deprive the liberty of another without his consent and without legal justification. *Montgomery Ward v. Wilson*, 339 Md. 701, 721, 664 A.2d 916 (1995). An

officer making a warrantless arrest is not liable for false imprisonment if the officer had legal authority to arrest under the circumstances. *Id*. at 721.

Based on this case law, Officer Huggins argues that he is entitled to summary judgment with regard to Mr. Fernandes' false arrest and false imprisonment because he had the legal authority to detain and arrest him.  This argument is based on the same facts alleged in other parts of Officer Huggins' Motion; namely, Officer Huggins was responding to a call that an officer was in distress, and when he arrived, he observed Mr. Fernandes assaulting Officer Craine, and that Mr. Fernandes continued to resist Officer Huggins' attempts to arrest him.

As argued previously, there are disputed questions of material fact related to what Officer Huggins observed and what Mr. Fernandes was doing when Officer Craine arrived.  More specifically, as described by Mr. Erazo and Mr. Fernandes, Mr. Fernandes was not resisting Officer Craine at the time Officer Huggins arrived and did not resist Officer Huggins' attempts to arrest him.  Moreover, to the extent that Mr. Fernandes did resist Officer Huggins' attempts to arrest him, because Officer Huggins did not have probable cause to arrest Mr. Fernandes in the first instance, Mr. Fernandes' actions were legally justified.  *Wiegmann v. State*, 118 Md. App. 317, 330, 702 A.2d 928 (1997), *aff'd*, 350 Md. 585, 714 A.2d 841 (1998) (citation omitted).

For these reasons, summary judgment on Plaintiff's false arrest and false imprisonment claims against Officer Huggins must be denied.

B.  Assault and battery claim.

As Officer Huggins acknowledges in his motion, it is well-settled law in Maryland that an officer who utilizes force in effecting an illegal arrest commits the tort

of assault and battery.  *Park v. Shiflett*, 250 F.3d 843, 852 (4th Cir. 2001) (holding that officers committed battery of by throwing plaintiff up against a wall, kicking his legs apart, and handcuffing him during illegal arrest);  *Ashton v. Brown*, 339 Md. 70, 119, fn.24, 660 A.2d 447 (1995) ("If the plaintiffs' arrests constituted a false imprisonment, then the physical force used in effectuating the arrests would give rise to a cause of action for assault and battery.").

As explained *supra*, there are disputed questions of material fact relating to whether Officer Huggins was affecting an illegal arrest of Mr. Fernandes, which, in turn, results in factual disputes related to whether Officer Huggins was therefore committing an assault and battery.  For this reason, summary judgment on Plaintiff's assault and battery claims against Officer Huggins must be denied.

<u>CONCLUSION</u>

For the foregoing reasons, Officer Craine's and Officer Huggins' motion for summary judgment must be denied.

Respectfully submitted,

/s/
_____
Michael P. Coyle, Esq
CHAIFETZ & COYLE, PC
7164 Columbia Gateway Drive, Suite 205
Columbia, MD 21046
443-546-4608 (Tel.)
443-546-4621 (Fax)

Attorney for Plaintiff

DATED:          January 19, 2012

<u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 19th day of January 2012, a copy of the foregoing

document was served by First Class Mail to:

        Charles Frederick
        Associate County Attorney
        101 Monroe Street
        Rockville, MD 20850

            /s/
          _____
          Michael P. Coyle