**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

|  |  |  |
|---|---|---|
| VICTOR FERNANDES | * | |
| Plaintiff, | * | |
| v. | * | Civil Case No.: SAG-10-752 |
| MONTGOMERY COUNTY, MD, et al. | * | |
| Defendants. | * | |

## MEMORANDUM OPINION

Plaintiff Victor Fernandes ("Mr. Fernandes") sued Defendant Officer Paul Craine ("Officer Craine"),[1] alleging that Officer Craine violated his constitutional rights pursuant to 42 U.S.C. § 1983. Mr. Fernandes also brought state law malicious prosecution, false imprisonment, false arrest, assault, and battery claims. After a four-day trial commencing on December 4, 2012, the jury found for Officer Craine on the state law claims and on the § 1983 claim asserting false arrest, but determined that Officer Craine used excessive force against Mr. Fernandes in violation of his constitutional rights. The jury awarded Mr. Fernandes compensatory damages totaling $12,700. This Memorandum Opinion addresses Mr. Fernandes's request to allow the jury to consider punitive damages, which he raised for the first time on the third day of a scheduled three-day trial, after he had rested his case. Prior to this Court's ruling, Mr. Fernandes submitted a written memorandum ("Memorandum"), ECF No. 50, and both parties had an opportunity to be heard on the record. After the jury returned its verdict for Mr. Fernandes, this

---

[1] On November 28, 2012, the parties consented to trial before a magistrate judge, and the case was reassigned to me. ECF Nos. 40 and 41.

Court ruled that the jury could not consider punitive damages. This opinion provides the rationale for that ruling.

## I. Factual Background

Mr. Fernandes originally filed suit against Officer Craine, Dale Anonsen, Jason Huggins, and Montgomery County, Maryland on March 25, 2010. ECF No. 1. In the Complaint, Mr. Fernandes sought compensatory damages of at least $1,000,000, attorneys' fees and costs, and punitive damages in the amount of $1,000,000. *Id.* United States District Judge Alexander Williams, Jr. dismissed Montgomery County from this case on November 15, 2010, ECF No. 8, dismissed Dale Anonsen on March 23, 2010, ECF No. 32, and dismissed Jason Huggins on May 10, 2012, ECF No. 35, leaving Officer Craine as the sole defendant. The parties engaged in and completed discovery. According to counsel for Officer Craine, during the discovery process there was no discussion of, and no discovery relating to, punitive damages.

After discovery was complete, on November 6, 2012, the parties submitted a joint proposed Pretrial Order. ECF No. 37. The Local Rules require a proposed Pretrial Order to contain "the details of the damages claimed or any other relief sought as of the date of the pretrial conference." Local Rule 106.2(g) (D. Md. 2011). In compliance with that Rule, in the proposed Pretrial Order, Mr. Fernandes submitted the categories of damages that he would seek at trial.[2] *Id.* Mr. Fernandes represented that he sought $3,000 in medical expenses, $250,000 in

---

[2] This ruling is not based on Mr. Fernandes's failure to comply with a court order under Rule 16(f). Mr. Fernandes did not technically fail to obey the Pretrial Order because it was not formally entered on the docket until December 6, 2012. ECF No. 48. However, by signing the joint proposed Pretrial Order, Mr. Fernandes represented to Officer Craine and this Court that he was not seeking punitive damages. By later seeking punitive damages, Mr. Fernandes violated the purpose of Rule 16 pretrial orders, which exist "to expedite litigation and *eliminate surprise by framing the issues remaining for trial*." *Perfection-Cobey Co., Div. of Harsco Corp. v. City Tank Corp.*, 597 F.3d 419, 420 (4th Cir. 1979) (emphasis added). Mr. Fernandes also violated the spirit of Rule 1, which requires that the rules of civil procedure should be administered to "secure the just, speedy, and inexpensive determination of every action." Fed. R. Civ. P. 1.

lost income, $300,000 in emotional distress damages, and $200,000 in pain and suffering. *Id.* at 6-7. Notably, in the section enumerating the damages sought, Mr. Fernandes did not represent that he sought any amount of punitive damages.[3] *See id.*

On November 7, 2012, the parties submitted joint proposed jury instructions. ECF No. 39. No instructions on punitive damages were requested. *See id.* Officer Craine submitted additional proposed jury instructions on November 30, 2012. ECF No. 43. On December 4, 2012, the first day of trial, Mr. Fernandes proposed some additional jury instructions. ECF No. 45. Neither set of additional proposals included any punitive damages instructions. *See* ECF Nos. 43, 45.

On December 4, 2012, the parties selected a jury and informed the jury that the trial would last three days. Throughout the trial, the Court and the parties engaged in numerous scheduling discussions. Mr. Fernandes never mentioned punitive damages, never raised a concern that the trial would run longer than the allotted three days, and never mentioned a second phase of trial.[4] Early in the trial, the Court gave both parties a copy of its draft proposed jury instructions, which were based on the submissions by both parties. The Court asked the parties to look at the draft instructions and to suggest revisions.

After the lunch break on the second day of trial, December 5, 2012, Mr. Fernandes's counsel indicated that he had reviewed the Court's draft instructions. The Court held a charge conference at the end of the day. Mr. Fernandes suggested numerous changes to the instructions, but never indicated that punitive damages instructions were missing. In fact, during the charge

---

[3] The sole mention of punitive damages in the entire proposed Pretrial Order is in the fact section, during the recitation of the allegations in the Complaint. *See* ECF No. 37.

[4] Although the Court reviewed a rough draft of excerpts of the trial transcript in preparing this Memorandum, citation to those excerpts would be unproductive, because the page numbers will change in the final transcript.

conference, Officer Craine moved the Court to strike a stray line regarding punitive damages. This Court responded, stating that, "there's no punitive damages," and agreeing that the sentence needed to be removed. Counsel for Mr. Fernandes responded by stating, "[t]hat sentence also says you may make – oh no, I'm sorry that's correct." He did not object or indicate that he was still seeking punitive damages, and the Court therefore struck the sentence regarding punitive damages. During the same charge conference, the Court also sought input from both parties regarding the verdict form. Counsel for Mr. Fernandes suggested several changes to the verdict form, including one relating to compensatory damages. Still, he did not mention punitive damages.

On the morning of December 6, 2012, the Court distributed revised draft instructions incorporating the results of the charge conference. Further discussion about the verdict form and the jury instructions ensued, again without mention of punitive damages. On that date, the third day of the scheduled three-day trial, Mr. Fernandes rested his case at 10:34 A.M. Mr. Fernandes had yet to mention punitive damages. He did not indicate that he would seek to introduce any additional evidence, and he did not reserve any rights or objections. At 11:27 A.M., Officer Craine rested his case, and Mr. Fernandes indicated that there would be no rebuttal. The Court then took a brief recess to finalize the instructions. Out of the presence of the jury, the parties discussed the final draft of the jury instructions and the verdict form. Counsel for Mr. Fernandes again raised certain concerns about the forms, again did not mention punitive damages, and finally stated that he had no additional issues to raise. The Court indicated that it would retire to chambers to make the necessary changes to the forms, and to research one remaining dispute pertaining to language in the verdict form. After the changes and the research were complete, the Court would instruct the jury.

After making the changes and completing the necessary research, the Court ruled on the final dispute.  Then, at 11:54 A.M., immediately before the Court was to call the jury back to the courtroom to read the instructions, Mr. Fernandes, for the first time, stated "[r]ight now we have the jury going back immediately and potentially considering punitive[s].  At least that's what the -- that's how the instructions are, are they not[?]"  The Court indicated that the instructions did not include punitive damages, and that a stray sentence mentioning punitive damages had been previously removed.  Counsel for Mr. Fernandes responded, "[a]ll right.  That's what got stricken I apologize."  He then asked if the Court intended to conduct a second phase of trial for punitive damages, taking Officer Craine's financial wherewithal into account.  Counsel for Officer Craine objected, noting that punitive damages had not been raised, that there had been no testimony regarding punitive damages, that there had never been any instructions requested regarding punitive damages, that there had been no discovery on punitive damages, and that he was therefore "at a loss."  Counsel for Mr. Fernandes argued that punitive damages had been mentioned in the Complaint, and that he "was working under the assumption" that punitive damages would not be raised until after the jury had awarded compensatory damages.  The Court told the parties that it would not rule on the issue of punitive damages until after the jury returned its verdict.

The jury's deliberations lasted into a fourth day of trial.  That morning, Mr. Fernandes submitted a "Memorandum Regarding the Jury's Consideration of Puntive [sic] Damages After its Liability Deliberations." [ECF No. 50].  After the jury returned a partial verdict for Mr. Fernandes, the Court heard additional argument regarding punitive damages.  Officer Craine argued that neither punitive damages instructions nor bifurcation would be proper.  Officer Craine noted that he had believed, given the lack of discovery on punitive damages, the lack of a

motion to bifurcate the trial, and Mr. Fernandes's failure to mention punitive damages in the proposed Pretrial Order, the various proposed jury instructions, or the verdict forms, that Mr. Fernandes was no longer seeking punitive damages.  After considering Officer Craine's argument about the extreme prejudice he would suffer if the jury were to consider punitive damages, the Court ruled that the trial would not be bifurcated, and that the jury could not consider punitive damages.

### II.     Analysis

Mr. Fernandes argued that he should be able introduce additional evidence regarding punitive damages in a bifurcated trial if the jury returned a verdict for him.  Specifically, Mr. Fernandes represented to the Court that he wished to call Officer Craine as a witness to testify about his financial status.  Although Mr. Fernandes did not expressly label his motion, the Court will consider Mr. Fernandes's argument under three theories: as a motion to reopen the record, as a motion to bifurcate the trial, and as a motion to instruct the jury regarding punitive damages. His motion fails no matter how it is construed.

#### a. Motion to Reopen the Record

Because Mr. Fernandes rested his case without discussing punitive damages and without reserving his rights to address punitive damages in a separate phase of the trial, the Court would have had to reopen the record to allow additional evidence relevant to punitive damages.  It is within the trial court's "sole discretion to reopen a case to admit new evidence." *United States v. Abbas*, 74 F.3d 506, 510 (4th Cir. 1996); *Levy v. Lexington Cnty., S.C.*, 589 F.3d 708, 714 (4th Cir. 2009).  In exercising this discretion, the trial court must consider whether "(1) the evidence sought to be introduced is especially important and probative; (2) the moving party's explanation for failing to introduce the evidence is *bona fide*; and (3) reopening will cause undue prejudice to

the non-moving party." *Levy*, 589 F.3d at 714. The trial court acts within its discretion in refusing to reopen a case if the party seeking to introduce new evidence "fails to substantiate even one prong of the test." *Abbas*, 74 F.3d at 511. While the first prong weighed in favor of reopening this case, the last two prongs weighed heavily against reopening.

If punitive damages were to be considered, evidence regarding Officer Craine's financial status would be probative. Whether or not a plaintiff bears the burden of proving a defendant's ability to pay punitive damages in federal § 1983 actions, such evidence is a "proper consideration in assessing punitive damages." *Wallace v. Poulos*, 861 F. Supp. 2d 587, 600 (D. Md. 2012). Mr. Fernandes clearly believed the evidence to be probative, as he sought to re-call Officer Craine to testify about his finances in support of the putative punitive damages claim. Moreover, if punitive damages were to be considered, Officer Craine likely would have wanted to adduce evidence regarding his financial status. As such, the prong relating to the probative nature of the proposed evidence weighed in favor of reopening the evidence.

Mr. Fernandes, however, has failed to meet the second prong by providing a *bona fide* explanation for his failure to introduce the evidence before resting his case. Officer Craine testified at trial, giving Mr. Fernandes ample opportunity to ask Officer Craine questions and to introduce evidence probative to calculating punitive damages. Mr. Fernandes claimed on the record that his failure to raise the issue of punitive damages until after resting his case was essentially an inadvertent oversight, largely based on his assumption that there would be a separate bifurcated trial on punitive damages alone. Inadvertence, however, "is not a compelling explanation for failing to offer available evidence in the first instance." *Dairyland Power Co-op v. United States*, 103 Fed. Cl. 640, 643 (Fed. Cl. 2012) (citing *Love v. Scribner*, 691 F.2d 1215, 1235 (S.D. Cal. 2010)) (internal quotations omitted).

Moreover, Mr. Fernandes's unilaterally-held assumption that there would be a bifurcated trial on punitive damages was entirely unreasonable. Mr. Fernandes had almost one month to seek an amendment to the proposed Pretrial Order to include punitive damages or a request for bifurcation. Mr. Fernandes never filed a motion, either before or after the proposed Pretrial Order, requesting bifurcation. The trial was scheduled for three days, ECF No. 40, and there was no mention of a bifurcated trial until after both parties had rested their cases on the third and purportedly final day. The Court, at several junctures, asked the parties scheduling questions. Mr. Fernandes represented to the Court on numerous occasions that he believed the trial was on or ahead of schedule. Given the fact that, even without a punitive damages phase, the jury's deliberations extended into a fourth day, there was no conceivable way that a bifurcated trial, involving two separate deliberations, could have been completed in three days. The delay would have been exacerbated because Mr. Fernandes had neither submitted any proposed jury instructions regarding punitive damages, nor suggested any language regarding punitive damages for a verdict form. Resolving the inevitable disputes over those issues would have taken substantial time.

Mr. Fernandes's assumption that there would be a bifurcated trial to address punitive damages was also unreasonable because neither the Court nor Officer Craine had notice that Mr. Fernandes was seeking punitive damages. While Mr. Fernandes certainly sought punitive damages in his Complaint, ECF No. 1, all of his subsequent conduct, as detailed above, indicated that he had abandoned that claim. Under these circumstances, Mr. Fernandes's belief that there would be a bifurcated trial regarding punitive damages was entirely unreasonable, and constitutes an insufficiently *bona fide* explanation for failing to introduce evidence of Officer Craine's financial status during his case-in-chief.

The final prong, prejudice to Officer Craine, would have been extraordinarily severe. As noted above, a trial court acts within its discretion in rejecting a motion to reopen if the non-moving party would be unduly prejudiced. *See Abbas*, 74 F.3d at 510-11; *Levy*, 589 F.3d at 714.

At trial, Officer Craine was represented by the Office of the County Attorney for Montgomery County, Maryland. The County represented Officer Craine in his official capacity as an officer. If punitive damages were sought, Officer Craine would have been able to retain separate counsel to represent him in his individual capacity on punitive damages.[5] Due to the complete lack of notice regarding punitive damages during the pretrial phase, Officer Craine, quite reasonably, had not hired separate counsel. Moreover, even if the County had been authorized to represent Officer Craine as to his personal assets, it was justifiably unprepared to do so in this trial due to the lack of notice. Either way, reopening the case to have Officer Craine testify about his personal finances would have denied Officer Craine the ability to seek and have outside counsel to represent him personally, and would have robbed him of the ability to prepare to testify regarding his personal finances. As such, Officer Craine would have been severely prejudiced if the record had been reopened.

**b. Motion to Bifurcate**

Alternatively, if Mr. Fernandes's motion is treated as a motion to bifurcate, it also fails because (1) bifurcation would have prejudiced Officer Craine, and (2) bifurcation, as requested by Mr. Fernandes, would have been highly inefficient. Pursuant to Rule 42, a court may order a separate trial "[f]or convenience, to avoid prejudice, or to expedite and economize." Fed. R. Civ. P. 42(b). "Bifurcation is the exception; not the rule." *L-3 Commun. Corp. v. OSI Sys., Inc.,* 418 F. Supp. 2d 380, 382 (S.D.N.Y. 2005) (citations omitted); *see Coryn Group II, LLC v. O.C.*

---

[5] According to Officer Craine's counsel, any punitive damages award would have to be paid from Officer Craine's personal assets.

*Seacrets, Inc.*, Civil No. WDQ-08-2764, 2011 WL 5825689, at *2 (D. Md. Nov. 16, 2011) (noting that separating issues for trial "is not to be routinely ordered."). Here, Mr. Fernandes did not make a motion to bifurcate until after he had rested his case on the third day of a scheduled three-day trial. At that point, the Court could not bifurcate the trial without causing extreme prejudice to Officer Craine, as discussed above. Rule 42 allows courts to order separate trials "to avoid prejudice," not to create it.

Moreover, the bifurcation proposed by Mr. Fernandes, would not "expedite and economize" the trial. Mr. Fernandes apparently sought to conduct one phase of trial on liability and on certain categories of damages, including medical expenses and non-economic compensatory damages, and a second phase on punitive damages alone. A party may be liable for punitive damages in a § 1983 action "for conduct that involves reckless or callous indifference to the federally protected rights of others, as well as for conduct motivated by evil intent." *Cooper v. Dyke*, 814 F.2d 941, 948 (4th Cir. 1987) (internal quotations omitted). At the trial, Mr. Fernandes introduced medical bills, testimony from his mental health provider, and evidence regarding his emotional pain and suffering. Officer Craine's testimony at trial, and Mr. Fernandes's testimony regarding Officer Craine's actions, was relevant to liability and to both compensatory and punitive damages. Because so much of the evidence introduced in the initial trial would have been relevant to consideration of punitive damages, it would have been highly inconvenient to have a separate phase of trial pertaining solely to Officer Craine's finances. Moreover, the jury was already being asked to consider the evidence pertaining to compensatory damages *only* if they found liability. There would be no reason to surmise that the jury could not have followed a similar instruction regarding punitive damages.

If bifurcation were to have been contemplated at all, the only logical division would have put liability evidence only in the first phase and all damages, not just punitive damages, in the second phase.  Such a division would have allowed a shorter, more efficient presentation in the liability phase to the jury, whereas Mr. Fernandes's proposed bifurcation would not.[6]  Mr. Fernandes never timely moved to bifurcate punitive damages only, but had he done so, his motion would have been denied as inconsistent with Rule 42.  His untimely motion is also denied.

### c. Motion to Instruct Jury on Punitive Damages

Last, Mr. Fernandes's motion may be construed as a request to instruct the jury regarding punitive damages.  A trial court may, in its discretion, refuse a party's request to include requested jury instructions if the request is untimely.  *See Gibson v. Gill-Lee Towing, Inc.*, No. 88-2208, 1990 WL 2199, at *1-2 (4th Cir. Jan. 5, 1990).  In *Gibson*, for example, the Fourth Circuit held that the trial court below did not err in failing to include Gibson's requested jury instruction regarding an employer's duty to warn.  *Id.* at *1.  The court reasoned that

> Gibson failed to request the instruction: (1) in his proposed jury instructions which he submitted to the district court prior to the final pre-trial conference; (2) in his supplemental proposed jury instructions which he also filed with the court; (3) during the four days of trial; (4) before or during the 90-minute conference on jury instructions held in the trial judge's chambers on the day prior to the conclusion of the trial; (5) after counsel were provided with a written text of the court's proposed jury instructions immediately after the conference; (6) before final arguments were delivered to the jury; or (7) before the jury instructions were read by the court.  Indeed, Gibson did not object to the absence of a duty to warn instruction until after the jury had been charged and was about to begin its deliberations.

*Id.*  The court held that this delay was unjustified, and therefore upheld the trial court's decision to withhold inclusion of the requested jury instruction.  *Id.* at *2.

---

[6] For example, the expert mental health provider and Mr. Fernandes's family members would not have testified in a liability-only phase.

11

Similarly, here, Mr. Fernandes failed to request any instructions on punitive damages: (1) in the joint proposed jury instructions filed almost one month before trial; (2) in his supplemental proposed jury instructions filed with the court on the first day of trial; (3) during the first three days of trial before he rested his case; (4) after he received and reviewed a preliminary draft of the Court's jury instructions on the morning of the second day of trial; (5) when he proposed changes during recess after lunch on the second day of trial; (6) before or during the charge conference at the end of the second day of trial; (7) when Officer Craine moved to strike a stray sentence regarding punitive damages during the charge conference; or (8) after receiving, reviewing, and discussing a copy of the Court's proposed jury instructions on the morning of the third day of trial. While Mr. Fernandes did request undefined instructions on punitive damages moments before the instructions were read to the jury, his delay was, as in *Gibson*, wholly unjustified. Mr. Fernandes had ample opportunity to request and offer punitive damages instructions at every stage of the litigation. As such, Mr. Fernandes's request to include jury instructions regarding punitive damages was properly denied.

Dated: December 27, 2012                                /s/
                                                        Stephanie A. Gallagher
                                                        United States Magistrate Judge